**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:19-cv-00054-MR**

| | |
|---|---|
| **JONATHAN MARK HOLCOMBE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **MEMORANDUM OF** |
| **vs.** ) | **DECISION AND ORDER** |
| ) | |
| **ANDREW SAUL, Commissioner** ) | |
| **of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for
Summary Judgment [Doc. 7] and the Defendant's Motion for Summary
Judgment [Doc. 8].

**I.    PROCEDURAL HISTORY**

The Plaintiff, Jonathan Mark Holcombe ("Plaintiff"), filed an application
for disability insurance benefits under Title II of the Social Security Act (the
"Act"), alleging an onset date of February 15, 2015. [Transcript ("T.") at 163].
The Plaintiff's application was denied initially and upon reconsideration. [T.
at 81, 96]. Upon Plaintiff's request, a hearing was held on July 17, 2017
before an Administrative Law Judge ("ALJ").  [T. at 34-67].  On January 31,
2018, the ALJ issued a written decision denying the Plaintiff benefits, finding

that the Plaintiff was not disabled within the meaning of the Act since the alleged onset date of February 15, 2015. [T. at 18-29]. The Appeals Council denied the Plaintiff's request for review on December 18, 2018, thereby making the ALJ's decision the final decision of the Commissioner. [T. at 1-4]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence."  Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted).  "It consists of more than a mere scintilla

of evidence but may be less than a preponderance." <u>Hancock v. Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." <u>Johnson</u>, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. <u>Id.</u> (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." <u>Radford v. Colvin</u>, 734 F.3d 288, 295 (4th Cir. 2013).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability.

20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015).  "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps."  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted).  The burden is on the claimant to make the requisite showing at the first four steps.  Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920).  If not, the case progresses to step two, where the claimant must show a severe impairment.  If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled.  Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P.  If so, the claimant is automatically deemed disabled regardless of age, education or work experience.  Id.  If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC").  The RFC is an administrative assessment of "the most" a claimant can still do on a "regular

and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. SSR 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; <u>Mascio</u>, 780 F.3d at 634. If the claimant can still perform his or her past work, then the claimant is not disabled. <u>Id.</u> Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. <u>Id.</u>; <u>Hines v. Barnhart</u>, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; <u>Mascio</u>, 780 F.3d at 635. If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled and the application for benefits must be denied. <u>Id.</u> Otherwise, the claimant is entitled to benefits. In this case, the ALJ rendered a determination adverse to the Plaintiff at the fifth step.

## IV.    THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date, February 15, 2015. [T. at 20]. At step two, the ALJ found that the Plaintiff has severe impairments, including: history of traumatic brain injury ("TBI"), cognitive disorder with memory impairments, anxiety, depression, trigeminal neuralgia, obstructive sleep apnea ("OSA"), and obesity. [Id.]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [T. at 24]. The ALJ then determined that the Plaintiff, notwithstanding her impairments, has the RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) except he can never climb ladders. He can never be exposed to unprotected heights or dangerous moving machinery. He can occasionally be exposed to extreme heat. He can perform simple, routine tasks and instructions. He can have occasional contact with the public. He can concentrate on, focus and attend to work activities for at least two hours at a time before needing a normal break of 15 minutes or once per day a 30-minute meal break. He cannot participate in fast-paced production work, and he can have only occasional changes in the workplace and/or work methods.

[T. at 25].

At step four, the ALJ identified Plaintiff's past relevant work as a police officer and magistrate. [T. at 28]. The ALJ observed, however, that the

Plaintiff is "unable to perform any past relevant work." [Id.]. At step five, based upon the testimony of the VE, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy, including: storage facility rental clerk, mail clerk (non-post office), and checker I. [T. at 28-29]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from February 15, 2015, the alleged onset date, through January 18, 2018, the date of the ALJ's decision. [T. at 29].

## V. DISCUSSION[1]

In this appeal, the Plaintiff sets out two assignments of error.[2] [Doc. 7-1 at 3]. Specifically, the Plaintiff contends that the ALJ failed to properly discuss and evaluate the evidence of record related to the Plaintiff's mental limitations, and that the ALJ failed to explain how she reconciled certain

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

[2] While the Plaintiff states "there are three critical errors committed by the ALJ," however, the Plaintiff sets forth only two assignments of error. [Doc. 7-1 at 3]. As such, to the extent that Plaintiff attempts to weave any other disparate legal arguments or errors into his assignments of error, the Court disregards those arguments. [See Doc. 7-1]. Such arguments must be set forth in separate assignments of error to be considered by this Court. See e.g. Gouge v. Berryhill, No. 1:16-cv-00076-MR, 2017 WL 3981146, at *2 (W.D.N.C. Sept. 11, 2017) (Reidinger, J.) (collecting cases). The Court instructs counsel for Plaintiff to separately set forth each alleged error in order to aid both counsel and the Court in analyzing the proper framework and legal bases for these arguments.

contradictory evidence with the mental limitations found in the Plaintiff's RFC. [See Doc. 7-1 at 3-16]. This incomplete analysis, the Plaintiff contends, led to an incomplete or inaccurate assessment of his abilities, which in turn resulted in an unsubstantiated RFC. [Id.]. Consequently, the Plaintiff argues, that the ALJ's hypothetical to the VE and her ultimate determination, both of which relied upon this unsubstantiated RFC, are equally unsupported, and the matter must be remanded for further proceedings.

Social Security Ruling 96-8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.[3] SSR 96-8p; see also Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (finding that remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where

---

[3] The functions listed in the regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting;" and (3) other work-related abilities affected by "impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 416.945.

other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted).

When a plaintiff's claim is based on mental health impairments, the Social Security Rules and Regulations require an in-depth review and analysis of the plaintiff's mental health history.  The Regulations make plain that "[p]articular problems are often involved in evaluating mental impairments in individuals who have long histories of … prolonged outpatient care with supportive therapy and medication."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.  The Regulations, therefore, set forth a mechanism for this type of review and documentation, known as the "special technique," to assist ALJs in assessing a claimant's mental RFC.  <u>See</u> SSR 96-8p; 20 C.F.R. §§ 404.1520a, 416.920a.  The special technique "requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' of the adult mental disorders listings."  SSR 96-8p.  Paragraph B of the listings provides the functional criteria assessed, in conjunction with a rating scale, to evaluate how a claimant's mental disorder limits her functioning.  These criteria represent the areas of mental functioning a person uses in the performance of gainful activity.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A.  The Paragraph B criteria include restrictions in activities

of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.[4] Id. The ALJ uses the special technique to "evaluate the severity of mental impairments … when Part A of the Listing of Impairments is used." 20 C.F.R. § 404.1520a(a).

> Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s)…. If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings[.]

20 C.F.R. § 404.1520a(b)(1). With regard to mental health issues, "[t]he determination of mental RFC is crucial to the evaluation of your capacity to do [substantial gainful activity] when your impairment(s) does not meet or equal the criteria of the listings, but is nevertheless severe." 20 C.F.R. Pt. 404, Subptd. P, App. 1, § 12.00A. The RFC assessment is formulated in light of a claimant's physical and mental impairments. Rule 96-8p provides:

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2

---

[4] The Paragraph B criteria were recently amended. For claims filed on or after January 17, 2017, the new Paragraph B criteria include: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3) (as amended). Plaintiff's claim in this case was filed before the amendment and is, therefore, governed by the previous version of this Regulation.

and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].

SSR 96-8p. Rule 96-8p further explains as follows:

The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

Id. "Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id.

In this case, the ALJ found at step three of the sequential evaluation process that the Plaintiff suffers from moderate limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentration, persistence or pace; and moderate limitations in adapting or managing himself. [T. at 24-25]. By making these findings at step three, the ALJ found that facts exist which

11

correlate with a limitation on the Plaintiff's ability to carry out the areas of mental functioning listed in Paragraph B. In formulating the Plaintiff's RFC, however, the ALJ failed to fully explain whether these limitations translated into any *actual functional limitations*.

On the surface, it appears the ALJ accounted for Plaintiff's various "moderate limitations" by restricting Plaintiff to:

> [S]imple, routine tasks and instructions. He can have occasional contact with the public. He can concentrate on, focus and attend to work activities for at least two hours at a time before needing a normal break of 15 minutes or once per day a 30-minute meal break. He cannot participate in fast-paced production work, and he can have only occasional changes in the workplace and/or work methods.

[T. at 21]. The ALJ's decision, however, fails to explain how these accommodations in the RFC relate to, or account for, the Plaintiff's mental impairments or any actual functional limitations resulting from Plaintiff's moderate limitations in the areas of mental functioning.

In formulating the RFC, the ALJ recites, without any analysis, the Plaintiff's testimony before concluding:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms <u>are not entirely consistent</u>

> with the medical evidence and other evidence in the
> record for the reasons explained in this decision.

[T. at 26-27 (emphasis added)]. The ALJ, however, does not provide any discussion or analysis concerning what evidence is inconsistent with the Plaintiff's allegations. Instead, the ALJ proceeds as follows:

> After reviewing the entire longitudinal record in this matter, I find the report from Dr. Barrett the most persuasive evidence regarding the severity of the claimant's mental impairments. Dr. Barrett conducted a neuropsychological evaluation in December 2015. He found that, although Mr. Holcomb might be experiencing subtle decline in his cognitive functioning, the outcome of this evaluation including his history and test results is not consistent with any cognitive diagnosis. The symptoms of memory loss that he reported are commonly experienced by most people (supra).

[T. at 27 (emphasis added)]. The ALJ's explanation is lacking in the analysis needed for meaningful review. The ALJ's statement that she has reviewed the "entire longitudinal record" in assessing the Plaintiff's RFC is insufficient to satisfy the requirement of Social Security Ruling 96-8p that the ALJ's decision "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p. While the ALJ finds Dr. Barrett's neuropsychological evaluation the most persuasive, the evaluation appears to have concerned only the

Plaintiff's diagnoses of dementia due to head trauma, anxiety, and posttraumatic encephalopathy. [See T. at 443-449]. Further, the ALJ's discussion of Dr. Barrett's opinion appears to contradict the ALJ's earlier findings concerning the Plaintiff's severe impairments. Specifically, as noted by the ALJ, Dr. Barrett concluded that while the Plaintiff may be experiencing a "subtle decline" in cognitive functioning, the outcome of the evaluation was not consistent with any cognitive diagnosis and that the "symptoms of memory loss that [Plaintiff] reported are commonly experienced by most people." [T. at 448]. The ALJ fails to explain how Dr. Barrett's opinion — that the Plaintiff's symptoms of memory loss are commonly experienced by most people — does not conflict with the ALJ's earlier finding that the Plaintiff's severe impairments include a history of TBI and cognitive disorder with memory impairments. Moreover, in his evaluation, Dr. Barrett opined that:

> Even if [Plaintiff's] prior motor vehicle accidents had resulted in mild brain trauma, the length of time between each of them and between them and the August 2008 injury makes it extremely unlikely that all of [these] injuries together caused any persisting neurocognitive disturbance.

[T. at 448]. Again, the ALJ fails to reconcile Dr. Barrett's opinion that the Plaintiff is extremely unlikely to have any persisting neurocognitive disturbances resulting from his history of TBI, with the ALJ's finding that the Plaintiff's history of TBI and cognitive disorder with memory impairments are

14

severe impairments that "significantly limit the ability to perform basic work activities." [T. at 24]

The remainder of the ALJ's narrative is further lacking in the analysis necessary for meaningful review. In her decision, the ALJ states:

> <u>While later accidents could have exacerbated his issues, the claimant's earnings records show he earned $18,886 in 2015 (8D/2)</u>. According to the records from Sylvia, in December 2014 the claimant was working two full 24-hour shifts and then had two days off. The [Plaintiff] was also working night shifts. He indicated he was experiencing problems sleeping and anxiety (supra). While the claimant's job became increasingly difficult for him in 2015, the critical issue in this matter is not only whether the claimant was unable to continue his work as a magistrate in 2015, but whether he was capable at that time of making a successful adjustment to other work that existed in significant numbers in the national economy. [Plaintiff] continues to engage in a wide variety of activities of daily living as described herein. Claimant has likely experience[d] some cognitive deficiencies and some loss of memory, <u>which warrant the limitations to performing simple routine tasks and instructions for two hours at a time</u>.

[T. at 27 (emphasis added)]. The ALJ's narrative is difficult to follow and reconcile with both the evidence of record and her previous findings. The ALJ found that the Plaintiff had not engaged in substantial gainful activity since February 15, 2015, the alleged onset date. [T. at 20]. At the hearing, the Plaintiff testified he had not worked since February 15, 2015. [T. at 42]. The ALJ, in response, stated that it appeared as though the Plaintiff had

"some income from the state after February 15th," and proceeded to ask the Plaintiff if he had received "some short-term disability, or vacation payout or something like that after [he] left work?." [Id.]. The Plaintiff responded in the affirmative, stating that he "was on temporary disability." [Id.]. How or why this is relevant to the ALJ's analysis is unclear.[5] Further, other than the Plaintiff's earnings, the ALJ only describes in general terms the evidence of record but it is unclear as to *what* evidence is *specifically* referred to and *why* the evidence supports her conclusions. Moreover, despite Plaintiff's RFC reflecting multiple limitations that appear related to his mental impairments, the ALJ's only discussion of any of these limitations is the Plaintiff's limitation to "performing simple routine tasks and instructions for two hours at a time." [T. at 27]. As such, the Court is left to guess as to how the RFC accommodates the Plaintiff's mental impairments and what, if any, actual functional limitations resulted from Plaintiff's moderate limitations in the areas of mental functioning.[6]

---

[5] Although difficult to ascertain, the ALJ may have included the Plaintiff's earnings from 2015 under the erroneous belief that the Plaintiff claimed he had not worked since February 2014. Earlier in her decision, the ALJ states that the "[Plaintiff] stated he has not worked since February 2014, but that he has helped friends do things." [T. at 26 (emphasis added)].

[6] Similarly, in assessing the Plaintiff's non-mental impairments, the ALJ's decision is lacking in the analysis needed for meaningful review. In assessing the portion of the RFC concerning the Plaintiff's non-mental impairments, the ALJ summarily provides:

Compounding the failure to adequately discuss and analyze the evidence of record in assessing the Plaintiff's mental impairments, the ALJ also fails to identify any medical opinion given significant weight that supports the mental RFC determination. The ALJ gave "great weight" to the initial State Agency psychological consultant's mental assessment. [T. at 27]. However, contrary to the ALJ's determination, the State Agency psychological consultant found the Plaintiff's alleged symptoms "fully credible." [T. at 76]. Further, the State Agency psychological consultant determined that the Plaintiff should be limited to working in an "environment with no public contact and limited social interactions." [T. at 78 (emphasis

---

[Plaintiff's] obesity, pain from trigeminal neuralgia, and sleep apnea have been addressed by limiting him to light work away from extreme heat, ladders and hazardous conditions.

[T. at 27]. The ALJ never explains how she concluded — based on the evidence of record — that the Plaintiff could actually perform the tasks required of light work or the additional physical limitations in the RFC. See Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) ("The ALJ concluded that [Plaintiff] could perform "medium work" and summarized evidence that he found credible, useful, and consistent. But the ALJ never explained how he concluded — based on this evidence — that [Plaintiff] could actually perform the tasks required by "medium work," such as lifting up to 50 pounds at a time, frequently lifting or carrying up to 25 pounds, or standing or walking for six hours."). Therefore, the ALJ failed to build an "accurate and logical bridge" from the evidence of record to the RFC conclusions.

While the ALJ's ultimate conclusions as to Plaintiff's limitations may be correct, the Court is left to guess regarding how they were reached. Under these circumstances, the Court cannot affirm the ALJ's finding of no disability without a showing of substantial evidence to support her findings at each step of the sequential evaluation process. Mascio, 780 F.3d at 637.

added)]. The ALJ's decision, in determining the Plaintiff's limitations in interacting with others, provides:

> In interacting with others, the [Plaintiff] has a moderate limitation. The [Plaintiff's] mother reported the claimant shopped in stores (4E/4). She also reported he went to coffee houses and drank coffee with others. Additionally, she indicated he went to the Waffle House, Huddle House and occasionally attended church (Id/5).

[T. at 25]. The ALJ never explains how the cited evidence supports a determination that the Plaintiff has moderate limitations in interacting with others. Further, despite giving great weight to the State Agency psychological consultant's mental assessment, the ALJ fails to explain why the Plaintiff's RFC allows for occasional contact with the public and no limitations as to social interactions.

Similarly, in giving great weight to Dr. Nicolino's neuropsychological evaluation, the ALJ only provides that she has "provided limitations in the RFC to address her concerns." [T. at 27]. The ALJ fails to identify either the specific limitations included in the RFC or the concerns of Dr. Nicolino. Further, by merely alluding to the concerns of a provider of a medical opinion, the ALJ fails to address the task at hand, namely, the formulation of the RFC assessment in light of a Plaintiff's physical and mental impairments. As such,

the ALJ's narrative fails to reconcile the weight purportedly assigned to the various medical opinions and the RFC.

A reviewing court cannot be "left to guess about how the ALJ arrived at her conclusions on [a plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended." Mascio, 780 F.3d at 637. It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports [her] decisions, and the only recourse is to remand the matter for additional investigation and explanations." Mills v. Berryhill, No. 1:16-cv-25-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citation omitted).

As such, the Court must remand the case on this ground so that the ALJ may comply with the proper procedure for assessing the Plaintiff's mental impairments *before* expressing an RFC determination. See Mascio, 780 F.3d at 636; Patterson v. Comm'r Soc. Sec. Admin., 846 F.3d 656, 659 & 662 (4th Cir. 2017) ("[T]he weight of authority suggests that failure to properly document application of the special technique will rarely, if ever, be

harmless because such failure prevents, or at least substantially hinders, judicial review.").

## VI. CONCLUSION

Because this Courts lacks an adequate record of the basis for the ALJ's decision, it cannot conduct a meaningful review of that ruling. See Radford, 734 F.3d at 295. Upon remand, the ALJ must perform a function-by-function analysis of the Plaintiff's mental limitations and work abilities, and thereafter "build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189 (citation omitted). The ALJ's analysis should include a narrative assessment describing how the evidence supports each conclusion, as required by SSR 96-8p, accounting for the Plaintiff's limitations in understanding, remembering, or applying information; interacting with others; concentration, persistence or pace; adapting or managing oneself, if any, including an assessment of whether Plaintiff can perform work-related tasks for a full work day. See Scruggs, 2015 WL 2250890, at *5 (applying Mascio to find an ALJ must not only provide an explanation of how a plaintiff's mental limitations affect his ability to perform work-related functions, but also his ability to perform them for a full workday).

In light of this decision, the Plaintiff's other assignment of error need not be addressed at this time but may be addressed by him on remand.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 7] is **GRANTED** and the Defendant's Motion for Judgment for Summary Judgment [Doc. 8] is **DENIED**. Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: November 11, 2019

Martin Reidinger
United States District Judge